## J. H. JORDAN v. W. J. GOWER.

EXEMPTION. *Rights of debtor to make selection.* Since all the statutes upon the subject of exemption have uniformly been considered and construed as constituting one system of laws, to be interpreted together, the right expressly conferred upon the debtor by the Acts of 1820 and 1827, to select such property as he elected to hold free from execution, attached to every subsequent statute, adding additional articles to the list of exempted property. It was not the intention, therefore, of the legislature by the Act of January 31, 1871, to repeal the laws containing such right.

Cases cited: State *v.* Haggard, 1 Hum., 392; Webb *v.* Brandon, 4 Hcisk., 285. Acts of 1820 and 1827, January 31, 1871.

### FROM DAVIDSON.

Appeal from the Circuit Court. NATHANIEL BAXTER, Judge.

W. G. and M. M. BRIEN for Jordan.

J. C. and J. M. GAUT for Gower.

NICHOLSON, Chief Justice, delivered the opinion of the Court.

O. C. Gower, being the head of a family in Davidson County, owned three horses, two of which were exempt from execution. Jordan had two executions against O. C. Gower, which he placed in the hands of W. J. Gower, as a constable. In the absence of O. C. Gower, Jordan and the constable went to his house, and Jordan directed the constable to levy on a bay filly, one of the three horses, and the most valuable. Before the day of sale O. C. Gower claimed the filly as exempt property, and tendered to the constable one of the other horses to be levied on and sold. The constable, being advised that O. C. Gower had the right to select two of the horses as exempt from execution, gave up the filly and took and sold the horse tendered by O. C. Gower. This horse failed to satisfy Jordan's execution, and he sues the constable for giving up the filly.

The foregoing facts were agreed on by the parties and submitted to the Circuit Judge, a jury being waived. Judge Baxter was of opinion that the creditor, Jordan, had the right to direct the constable upon which of the three horses he should levy, and that O. C. Gower, the owner, had no right to select the two horses to be exempt from execution. Judgment was accordingly given for Jordan, and Gower, the constable, appealed.

We have been furnished with Judge Baxter's opinion delivered in the case, from which we see that he concedes that from the passage of the first exemption Act, in 1820, down to the enactment of the Code, in 1858, the uniform construction, legislative and judicial, of the exemption laws was, that the debtor had the right to select the property which he elected to hold free from execution; but he holds that the Code operated as a repeal of all prior exemption laws, and that because the sections of the Code substituted for the former laws contain no language indicating the right to make the selection, as was contained in the Acts of 1820 and 1827, therefore the right of the officer to levy on any of the property was restored just as it existed before the exemption Act of 1820 was passed. Whether this reasoning, and the conclusion deduced from it, are correct or not, depends upon the intention of the Legislature in enacting the sections in the Code on the subject of exempted property. The first exemption Act, passed in 1820, expressly authorized the debtor to select and set apart the exempted articles. The next Act, passed in 1827, contained a similar authority, but none of the subsequent Acts, adding to the list of exempted articles, contained the express authority of the debtor to select and set apart; but all the Acts on this subject were considered and construed as constituting one system of laws, to be interpreted together, and hence that the right of selection attached whenever additional articles were added to the list. It was so held in the case of *Still* v. *Hag-*

*gard,* 1 Hum., 392, and that construction has been uni-
formly followed to the present time. The last case
reported is that of *Webb* v. *Brandon,* 4 Heisk., 285,
in which it was assumed that the right of selection
existed by a widow.

It is manifest that when the Act of January 31,
1871, was passed, the settled understanding of the
Court and of the profession was, that the right of
selection attached to exempted property. Without any
abuse of language, it may be said that this construc-
tion had prevailed so long that the right of selection
may be regarded as constituting part of the definition
of *exemption from execution;*—the exemption was for the
benefit of the debtor, and the enjoyment pre-supposed
his right of selecting the articles which he deemed
most beneficial.

The question is, did the Legislature, by the Act
of January 31, 1871, intend to take from the debtor
the right of selection? There is nothing indicating
this intention on the face of the Act, unless it can be
implied from the omission of the language used in the
Acts of 1820 and 1827, by which the right of selec-
tion was expressly conferred. But we have seen that
this language was omitted in all the subsequent Acts,
and yet that without this language the right of selec-
tion was uniformly held to exist. The Act of 1871
was passed for the express purpose of adding to the
list of exempted property, and also to do more than
" amend the exemption laws, and to comprise them all
in one act," as indicated in the caption of the law.

The purpose was to add to the law by way of amendment, and to bring all the exempted property into one view, to avoid the annoyance and trouble of looking through various Acts to ascertain what was and what was not exempted. It was not a repeal of former laws, and no such intention appears in the statute. The language giving the right of selection, used in the Acts of 1820 and 1827, was omitted, for the reason that upon the settled construction of the exemption laws this language was necessary. To hold differently would be to assume that the Legislature intended to take from the debtor a material benefit, when there is ample evidence in the Act itself that it was passed in furtherance of the liberal spirit which has actuated the Legislature on the subject for more than half a century.

We are therefore of opinion that the Circuit Judge erred in his judgment, and the same is reversed and judgment given for defendant below.